# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WARDELL ALLEN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 1895 |
| ) | |
| JO ANNE B. BARNHART, ) | Judge Ruben Castillo |
| Comissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wardell Allen, Jr. ("Allen") applied for Supplemental Social Security Income ("SSI") from the Social Security Administration ("SSA"). This is his second attempt to receive SSI – he was previously denied benefits in 2000. After the SSA denied his application, Allen requested a hearing with an Administrative Law Judge ("ALJ"). At the conclusion of the hearing, the ALJ upheld the SSA's determination that Allen was not disabled within the meaning of the Social Security Act ("the Act"). After the Social Security Appeals Counsel denied his request for review, Allen sought judicial review in this Court of the ALJ's decision. Jo Anne Barnhart, Commissioner of the Social Security Administration ("Commissioner"), has filed a motion for summary judgment. For the reasons stated below, this Court denies the Commissioner's motion for summary judgment and reverse and remands this case for further proceedings. (R. 18-1.)

## RELEVANT FACTS

Allen is a forty-nine year old resident of Chicago. (R. 17, Pl.'s Memo at 2.) He attended high school until the eleventh grade, after which he dropped out and joined the Navy. (*Id.*)

Three months after joining the Navy, Allen was discharged after one of his arteries was severed in an altercation. (R. 15, Admin. R. at 399.) From 1971 until 1999, Allen intermittently held jobs doing construction, maintenance, and factory work at a cannery plant. (*Id.* at 64, 102.) He alleges that he became disabled on January 27, 1997 because of back, ankle, and arm injuries. (*Id.* at 18.) Allen filed his first claim for SSI on October 1, 1999, but the SSA denied his claim. (*Id.* at 187.) Allen requested a hearing and the ALJ affirmed the SSA's decision in 2000. (*Id.*) Allen filed his second claim on August 6, 2002. (*Id.* at 17.)

I.   **Medical Evidence**

Allen alleges that he suffers from five primary medical conditions: a low-back condition, a bilaterial knee condition, HIV, peripheral neuropathy, and bronchial asthma. (R. 17, Pl.'s Memo at 2.) In 1996, Allen was diagnosed with osteoarthritis of the spine, knees, and ankles. (R. 15, Admin. R. at 254.) Progress notes from Dr. Allan Russcher, Allen's prior treating physician, and Sharon Allen[1], his current medical specialist, show continued problems with osteoarthritis of the spine, knees, and ankles as well as low back pain syndrome. (*Id.* at 177-180, 231, 234, 237-240.)

X-rays taken from December 1997 until March 2004 show a steady worsening of Allen's low back pain syndrome. (*Id.* at 341, 373.) Notes from a 2004 CT scan indicate that Allen has lumbar radiculophathy, or multiple lumbar disc disease; sacroiliac joint disease, or "a narrowing

---

[1]The Commissioner states in her brief that it is more likely that Sharon Allen is a nurse practitioner rather than a physician. (R. 18, Def.'s Mot. for Summ. J. at 3 n2.) For our purposes, this distinction is not relevant. The Social Security regulations state that claimants can submit medical evidence from "physicians and psychologists or *other acceptable medical sources* that reflect judgments about the nature and severity of [their] impairments..." 20 C.F.R. 404.1527(a)(2) (emphasis added).

of the si joints with subcondrial erosions and minimal osteophyte formation"; foraminal narrowing; and possibly ankylosing spondylitis, which is a type of inflammatory arthritis (*Id.* at 163, 388.)

Medical records also indicate that Allen has chronic problems with osteoarthritis in both knees, although his right knee is more severely impacted than his left knee. (*Id.* at 231.) Progress notes from 2000 show that Allen has "tenderness of cartilage lining the inner compartment of the knee joint...with decreased range of motion" as well as "internal derangement of [the] right knee." (*Id.* at 364-369, 376.) Notes from 2001 indicate continued tenderness in both knees. (*Id.* at 234.) The most recent notes from 2004 show signs of knee crepitance, which is a clicking sound in the knee joint when it is rotated. (*Id.* at 388-389.)

In April 2002, Allen complained of shortness of breath and was officially diagnosed with asthma in September 2002. (*Id.* at 143-144, 148.) He was prescribed inhalers in order to deal with the symptoms.

In December 2003, Allen was diagnosed with HIV infection and the HIV related disease of peripheral neuropathy. (*Id.* at 165-167.) Sharon Allen indicated that Allen's response to treatment was "fair" as of January 2004. (*Id.* at 165-168.) She completed a medical evaluation report and stated that Allen's ability to perform physical activities of daily living was reduced to 20-50% capacity and was limited to lifting no more than five pounds. (*Id.* at 168.) Using the terminology of the social security regulations, she opined that Allen suffered from marked social functioning capacity and marked functional capacity of concentration, persistence, and pace. (*Id.*)

For many of his conditions, most notably his HIV infection, Allen has been taking

prescribed medication which he claims causes chronic fatigue and drowsiness. (*Id.* at 172, 402, 405.) In addition, Allen alleges that he suffers from pain in his left forearm, resulting from surgery performed to fix a severed artery. (R. 17, Pl.'s Compl. at 2.)

## II. Hearing Testimony

### A. Allen's Testimony

At the April 28, 2004, administrative hearing, Allen testified that he is married, but lives in an apartment with a friend. (R. 15, Admin. R. at 408.) He does crossword puzzles and watches television during the day, and the friend does all of the chores. He rarely leaves the house, venturing out only to go to the doctor and occasionally visit family. (*Id.*) He testified that he has pain in his back that is constant and varies in intensity. (*Id.* at 402.) He stated that he takes the medication Vicodin three times a day and receives steroid shots at the Core Center[2] for the pain in his lower back. (*Id.* at 410-411.) He testified that the pain worsens if he lifts more than thirty pounds, walks further than a block, sits in the same position for too long, or stands for more than ten minutes. (*Id.* at 402-403.) Allen also testified that his knees bother him, and he takes the medication Naprosyn three times a day for his osteoarthritis. (*Id.* at 409.) He has a plate in his left ankle that is sometimes painful if he stands on it too long. (*Id.* at 404.) Allen also stated that he has pain in his left arm as a result of surgery to fix a severed artery. (*Id.* at 398, 410-411.) He briefly discussed his asthma, stating that it is controlled by an inhaler. (*Id.* at 410.)

Allen was diagnosed with HIV in March 2004 and is treated once a month by Sharon

---

[2]The Core Center is a medical institution in Chicago, IL that focuses on the care, prevention, and research of infectious diseases.

4

Allen at the Core Center. (*Id.* at 400-401, 405.) He testified that she reduced his ability to perform physical activities by fifty percent and advised him not to lift more than five pounds. (*Id.* at 416.) Allen also testified that his HIV medication makes him drowsy, causing him to nap in the afternoon and unexpectedly fall asleep at other times. (*Id.* at 407, 418.) He stated that he suffers from chronic fatigue, caused by his inactivity and lethargy during the day. (*Id.* at 414.) He further stated that he is a moderate smoker with a prior history of illegal drug use, but currently is not taking illegal drugs. (*Id.* at 408, 417.)

### B.   Expert Testimony

The only expert retained by the ALJ was a vocational expert, Gleeann Kehr. Kehr testified about Allen's past work as a laborer. (R. 17, Pl.'s Memo at 5.) While working in the cannery, Allen did exertionally medium and unskilled work stacking boxes and cleaning machinery. (*Id.*) His work as a construction laborer involved exertionally heavy and unskilled work. (*Id.*) He also held a maintenance position which involved medium, semi-skilled work. (R. 15, Admin. R. at 420.) In determining Allen's suitability for other jobs in the national economy, the ALJ asked Kehr to consider an individual of Allen's age, education, work experience, and physical limitations. Kehr testified that an individual who would require a job that involved no standing or walking for more than one hour at a time, could only lift twenty pounds, and had to avoid repetitive bending and twisting could not perform Allen's past relevant work. (*Id.*) He testified that other employment such as general office clerk or ticket taker could accommodate these limitations. (*Id.* at 21.) However, when the ALJ asked Kehr if an individual who has to lay down during the day, as does Allen, could qualify for such a position, Kehr testified that the individual would be precluded from performing all substantial gainful activity.

(*Id.*)

### III. ALJ's Decision

The ALJ determined that Allen has not engaged in any substantial gainful activity since his alleged onset date of January 27, 1997. (R. 15, Admin. R. at 18.) However, the ALJ found that Allen's impairments are not "severe" enough to meet or medically equal any of the listed impairments. (*Id.*) The ALJ did not find Allen's testimony as to lower back and knee pain and drowsiness from the HIV medication fully credible. (*Id.* at 19.) The ALJ furthered noted that there is "nothing to show that even if the claimant does not have the residual functional capacity to return to his past relevant work, he doesn't remain capable of a substantial range of light work." (*Id.*) The ALJ determined that Allen retains the residual functional capacity for "pushing and occasionally lifting and/or carrying up to 20 pounds; [and] sitting, standing and/or walking up to 6 hours in an 8 hour day . . . in a work environment exclusive of continuous standing or walking requirements over one hour [ ] and repetitive bending and/or twisting requirements." (*Id.* at 20.) Based on the testimony of the vocational expert, the ALJ determined that there are jobs in the national economy involving light work which Allen could undertake, including as a general office clerk, office helper, and ticket taker. (*Id.* at 21.) Consequently, the ALJ found that Allen is not disabled within the meaning of the SSA.

### LEGAL STANDARDS

The district court will uphold the ALJ's decision provided that the findings of fact are supported by substantial evidence and there are no errors of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* To determine if an ALJ's decision is

based on substantial evidence the decision must be one that a "reasonable mind could accept as adequate." *Manley v. Barnhart*, 04 C 3617, 2005 WL 3076879, at * 4 (7th Cir. Nov. 17, 2005) (citing *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005)). The standard of review for an agency decision is "deferential, but not entirely uncritical," for the ALJ's decision cannot stand "if it lacks evidentiary support or an inadequate discussion of the issues." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).

## ANALYSIS

To determine whether a claimant qualifies for benefits, the ALJ performs the familiar five step sequential analysis pursuant to 20 C.F.R. § 416.920:

> (1) whether "the claimant is performing substantial gainful work;"[3] (2) "if the claimant is not performing substantial gainful work, whether his impairment is severe;" (3) "if the claimant is not performing substantial gainful work and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, [whether] his impairment (or impairments) meets or medically equals a listed impairment;" (4) whether the claimant's impairment (or impairments) prevent him from doing past relevant work; and (5) "[e]ven if the claimant's impairment or impairments prevent him from performing past relevant work, [whether] other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors."

(R. 15, Admin. R. at 18.)

Allen contends that the ALJ's step three findings were improper because the ALJ does not discuss or cite to any social security impairment listings in rejecting Allen's claims. (R. 19, Pl.'s Reply at 1.) In his opinion, the ALJ stated that Allen's impairments are "severe" within the meaning of the Regulations but "not 'severe' enough to meet or medically equal, either singly or

---

[3]Substantial gainful activity is defined as work activity that "involves doing significant physical or mental activities . . . usually done for pay or profit, whether or not a profit is realized." 20 C.F.R 416.972

7

in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4" without further comment. (R. 15, Admin. R. at 18.)

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). In fact, "where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). In the instant case, the ALJ should have engaged in a more thorough examination of whether Allen met the requirements of any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 prior to making a conclusory determination that Allen's impairments are not severe enough to qualify for disability. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). The ALJ's one sentence analysis at step three is, at best, cursory and perfunctory. We have no way to determine if the ALJ applied the appropriate listing because he does not refer to any nor does he provide any explanation of why Allen's impairments are not severe enough to qualify as disabled within the meaning of the Act.

While the ALJ briefly mentions the relevant medical evidence, he does not appear to give weight to the opinion of Allen's treating specialist or the more recent medical progress notes in Allen's file. In addition, the ALJ does not consult any medical experts even though the Seventh Circuit has held that "[w]hether a claimant's impairment equals a listing is a medical judgment . . . an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670. Instead, the

ALJ focused most of his inquiry on step five, giving significant weight to Allen's lack of credibility and also to the testimony of the vocational expert who stated that Allen is capable of a substantial range of light work. (R. 15, Admin. R. at 19.) The Commissioner, in arguing that the ALJ's decision should be upheld, relies on reports filed by State agency physicians which state that Allen was not disabled. (R. 18, Def.'s Mot. for Summ. J. at 10.) However, these reports are from 2002, and later medical progress notes within the file indicate a worsening of Allen's condition. For example, in 2000, Dr. Russcher, Allen's previous treating physician, stated that Allen has osteoarthritis of the spine and an internal derangement of the right knee, although x-rays show problems with the spine as early as 1997. (R. 15, Admin. R. at 189-190.) In 2004, a CT scan revealed bulging discs in Allen's spine and possible rheumatoid arthritis and ankylosing spondylitis. (*Id.* at 163.) Furthermore, Allen's specialist, Sharon Allen, stated that Allen has functional limitations consistent with his back ailments. (*Id.* at 168.)

It is possible that Allen's symptoms could be consistent with a 14.09 listing.[4] (*Id.* at 19.) At the very least, the ALJ should have examined this possibility, despite his misgivings as to Allen's credibility. The ALJ's determination at step five of the analysis that Allen was able to perform other work existing in significant numbers in the national economy was premature and inherently flawed because of the incomplete step three analysis. *See Gentle v. Barnhart*, 430

---

[4]14.09A requires a "[h]istory of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively. . . ." 14.09B requires "[a]nkylosing spondylitis or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroiliitis (e.g., erosions or fusions), shown by appropriate medically acceptable imaging, with both: 1. [h]istory of back pain, tenderness, and stiffness, and 2. [f]indings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° or more of flexion measured from the vertical position (zero degrees). . ." App. 1 to Subpart P of Part 404, Listing 14.09.

F.3d 865, 866 (2005) (finding that the ALJ, who held that claimant could engage in gainful employment, failed to consider how the claimant's impairments, as a whole, affected claimant's ability to work). The ALJ's failure to properly conduct step three analysis is reversible error. *See Barnett*, 381 F.3d at 670 (reversing the ALJ's decision because the Court could not determine if the ALJ considered whether the claimant, who was uncredible, had an impairment that equaled a listing).[5]

## CONCLUSION

Under the applicable legal standards, we must deny the Commissioner's motion for summary judgment. (R. 18-1.) For the reasons stated above, we reverse the ALJ's decision and remand this case for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The Court directs the Clerk to enter judgment in favor of Allen and against the Commissioner.

ENTERED: _____

**Judge Ruben Castillo**

**United States District Court**

Dated: January 12, 2006

---

[5] In fact, the ALJ can order additional testing in order to make informed disability determinations and such testing may have been helpful in resolving the instant case. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("the partly adversarial, partly inquisitorial, procedure for adjudicating social security claims requires the ALJ to order additional tests if necessary to render an informed disability determination").